[Crim. No. 16167. First Dist., Div. Three. Feb. 23, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW JACLA, Defendant and Appellant.

## COUNSEL

Vincent E. Keyes, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FEINBERG, J.**—Appellant appeals from the judgment and sentence imposed after he had been found guilty of being an accessory to a crime (Pen. Code, § 32), in that he had given to the police a false alibi for another person accused of murder, and guilty of conspiracy to being an accessory (Pen. Code, § 182).

On appeal, appellant argues three grounds as constitutional error and then urges that the error was prejudicial and requires reversal.

1. The trial court erred in requiring appellant to be tried in shackles before a jury;

2. The trial court erred in not instructing the jury, *sua sponte,* that the physical restraint placed upon appellant should have no bearing on its determination of appellant's guilt; and

3. The trial court erred in denying appellant's motion for a change of venue based upon pretrial prejudicial publicity.

4. The error was prejudicial and requires reversal.

I. *Was it error for the defendant to be shackled throughout the trial before a jury?*

We conclude that it was.

On September 16, 1976, in chambers, immediately preceding the impanelling of the jury, defense counsel made a number of motions, the substance of which is not relevant in the context here. The defendant was present in handcuffs and leg irons. Present, also, was a Detective Sullivan. At the conclusion of these proceedings and, as it appears, everyone present was getting ready to move to the courtroom, the following ensued:

"THE BAILIFF: Your Honor, shall I remove the handcuffs and leave the leg irons on?

"THE COURT: All right.

"MR. GREGGINS: Your Honor, I don't believe that is necessary. I believe that there is no evidence that Mr. Andrew Jacla has ever attempted to escape, or commit any violence. He has come to all of his appearances.

"THE COURT: May I hear what happened the other night, Mr. Wilson, please? Or do you know?

"THE BAILIFF: There was a shootout, it was in the paper this morning.

"MR. MEYERHERM: Detective Sullivan.

"THE COURT: Do you know?

"DETECTIVE SULLIVAN: From the past argument, or dislike of a certain individual, four subjects, one of them being Andrew Jacla went to a residence of a William Crowder on Sierra Street in Vallejo, knocked on the door. Crowder answered the door. There were four people in the residence, two males answered the door. Crowder made the statement, 'You guys aren't welcome here.' Pushed one person back away from the door, slammed the door. At that point, the evidence shows, that four subjects stood outside the door and fired twenty-five to thirty shots into the house with bullets ricocheting to the next door residence and all that.

"MR. MEYERHERM: Plus a high speed chase.

"DETECTIVE SULLIVAN: High speed chase, one or more shots fired at the police car.

"THE COURT: You may use your discretion to keep a certain amount of security. Whatever you are satisfied you are safe with, all right.

"THE BAILIFF: All right."

The incident which Detective Sullivan narrated occurred during the evening of September 14, 1976.

In the course of the trial, defendant took the stand. In chambers, prior to defendant taking the stand, defense counsel requested the trial court to order the shackles removed on the ground that it would be prejudicial, inconvenient and uncomfortable to testify shackled. The court denied

the request, stating, "I think the jury has had its presence drawn to the attention of the shackles since the beginning of the trial."

The record is not clear as to the precise nature of the physical restraints imposed upon the appellant. In his brief, appellant speaks of "handcuffs and leg irons." The Attorney General does not deny the allegation.

The relevant basic principles to which we must look have been articulated in *People* v. *Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322]. *First,* "a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a *manifest need* for such restraints." (Italics added.) (At pp. 290-291.) *Second,* if the question of physical restraints arises, it is the trial court's obligation to initiate procedures to resolve the question. *Third,* the procedures the trial court may initiate must be such as to enable it to "make a *due process* determination of record that restraints are necessary." (Italics added.) (At p. 293, fn. 12.) *Fourth,* in determining whether physical restraints are to be employed, the record must show the likelihood of escape from violence or a threat of violence or other nonconforming conduct *in the courtroom. Fifth,* the trial court has discretion, upon a proper showing, to impose such physical restraints as seem appropriate. In exercising its discretion, the trial court should sanction the use of shackles only as a last resort, less obtrusive and less visible restraints being ineffective to ensure safety in the view of the trial court. *Sixth,* if the trial court in exercising its discretion orders visible restraints, the court must "instruct the jury *sua sponte* that such restraints should have no bearing on the determination of the defendant's guilt." (At pp. 291-292.) Finally, in *Duran,* the Supreme Court has made it clear that a trial court's determination imposing physical restraints, arrived at in a procedure consonant with *Duran,* "cannot be successfully challenged on review except upon a showing of a manifest abuse of discretion." (At p. 293, fn. 12.)

Applying these precepts to the case at hand, it was error from several stances to shackle defendant.

A. There was no showing of a need to shackle defendant.

While the trial court never explicated its reason or reasons for permitting the use of physical restraints, inferentially it appears that it was done for reasons of safety based upon information that within the 48

hours immediately preceding the hearing, the defendant, while at liberty on bail, had been involved with three others in a shooting affray. Thereafter, in the course of a high speed automobile pursuit by the police of the four individuals, one or more shots were fired from the fleeing car at the pursuing police car.

Since the evil to be avoided by shackling is the danger of turbulent conduct in the courtroom, the trial court must have reasoned that defendant might be (a) violent in the courtroom, i.e., he had just been involved in a shooting, and (b) might attempt to escape from the courtroom, i.e., he had, in connection with the shooting, attempted to elude arrest. The reasoning, if sound, would vitiate much of what *Duran* holds for every person who commits a crime while armed with a firearm and then attempts to elude police arrest could be shackled at his trial. Such a conclusion is justified neither by logic nor experience. We conceive *Duran* to hold that it is the defendant's conduct in *custody,* now or at other times (see *People* v. *Chacon* (1968) 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454], approved in *Duran, supra,* at p. 289; *People* v. *Condley* (1977) 69 Cal.App.3d 999 [138 Cal.Rptr. 515]), or his expressed intention to escape or engage in nonconforming conduct during the trial that should be considered in determining whether there is a "manifest need" for shackles.

B. There was no "due process determination" that physical restraints were necessary.

We have set forth heretofore the entire record insofar as it bears upon the issue of shackling the appellant.

We need not delineate the elements of "due process determination" for if a "due process determination" means anything, it must mean substantially more than was afforded appellant here. "[I]t is the function of the court . . . to initiate whatever procedures the court deems sufficient . . . [to] make a due process determination of record that restraints are necessary." (*People* v. *Duran, supra,* 16 Cal.3d at p. 293, fn. 12.) Thus, even if the trial court did not manifestly abuse its discretion on the facts, the determination of those facts denied appellant due process.[1]

---

[1]Whether the requirement of a "due process determination" is to be given retroactive application or prospective application only is irrelevant. (See *People* v. *Condley, supra,* 69 Cal.App.3d 999.) Here, the trial began some six months after *Duran.*

C. The trial court did not exercise its discretion; it delegated to the bailiff the question of what restraints, if any, were appropriate.

The record shows that the bailiff suggested the use of leg irons only. Counsel for appellant objected to any physical restraints. The trial court decided the matter by saying to the bailiff: "You may use your discretion to keep a certain amount of security. Whatever you are satisfied you are safe with, all right." Nothing further was said about what restraints should or would be imposed.

It might well have been appropriate to solicit the opinion of the bailiff, the person responsible for the security of the courtroom, in the course of a judicial determination as to what restraints, if any, were necessary. But, the determination to impose restraints and the nature of the restraints to be imposed are judicial functions to be discharged by the court, not delegated to a bailiff. (*People* v. *Duran, supra,* 16 Cal.3d 282.)

Under all these circumstances, it was a manifest abuse of discretion to try appellant in shackles.

■ II. *The court's failure to give an instruction to the effect that the physical restraints borne by defendant should have no bearing on the jury's determination of defendant's guilt was error.*

No extended discussion is necessary. The Supreme Court in *Duran* mandated that, *sua sponte,* such an instruction must be given when the physical restraints imposed are *visible* to the jury. (*People* v. *Duran, supra,* at pp. 291-292.) Here, in the course of the trial, appellant sought to have the restraints removed before taking the witness stand on the ground, inter alia, that it would be prejudicial to testify before the jury in shackles. The trial court denied the motion, observing that the jury had already had its attention drawn to the restraints from the outset of the trial.

Thus, appellant was shackled; the jury was aware that appellant had been shackled from the outset of the trial, and certainly must have seen the physical restraints when defendant took the witness stand; therefore, it was error for the trial court not to have given the appropriate cautionary instruction.

 III. *The trial court did not err in denying defendant's motion for a change of venue or, in the alternative, a continuance.*

Appellant made the motion on the first day of trial on the ground that a front-page newspaper account of the shooting incident, the same incident to which we have previously adverted relative to appellant's shackling, had appeared that morning and might prejudice the jury. The article named appellant as one of the four youths captured and stated: "Jacla is awaiting trial as a conspirator in 'firecracker murder' of David Lee Stuart, 29, of Pacifica, in Vallejo last April 18." The article is a part of the record before us.

When such a motion is made before the voir dire of the venire and is denied, a defendant has several choices before him. He can immediately petition for a writ of mandate; he can proceed with the voir dire and renew his motion for a change of venue during or after the voir dire on the basis of what had been elicited during voir dire regarding prejudicial pretrial publicity; he can go to trial and, if convicted, raise the issue on appeal. (*Maine* v. *Superior Court* (1968) 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372]; *People* v. *Quinlan* (1970) 8 Cal.App.3d 1063 [88 Cal.Rptr. 125].)

Here, appellant never sought mandamus. It may be asserted that appellant had no opportunity to seek such relief since the newspaper article appeared on the morning that the case went to trial. But, though appellant requested a continuance which was denied, it does not appear that the continuance was sought for the purpose of obtaining appellate relief or would have been denied if such purpose had been made known. Nor did appellant voir dire any member of the venire as to whether he had read the article. It appears from the record that appellant, as a deliberate tactic, did not wish any venireman questioned as to the article. When the trial court offered to question the veniremen as to whether any had read the newspaper and, if so, then question such a venireman in chambers, defendant rejected the offer. Appellant has not designated the voir dire of the jury as a part of the record.

Consequently, while we do not know what actually transpired during the voir dire, it seems a reasonable inference that nothing prejudicial to the appellant was developed in this regard. Our conclusion is supported by the fact that appellant did not renew his motion for a change of venue during or at the conclusion of the voir dire.

A motion for a change of venue must be granted whenever the dissemination of potentially prejudicial material presents even a reasonable likelihood that, in the absence of relief, a fair trial cannot be had. If a defendant, as appellant did in this case, elects to await trial and conviction before seeking appellate review of the denial of his motion for change of venue, then he cannot complain if inferences of possible prejudice have been refuted by the "actualities of *voir dire* and of trial." (*People v. Quinlan, supra,* 8 Cal.App.3d 1063, 1070.) ■ While the reviewing court must make an independent evaluation of the facts and must satisfy itself de novo that defendant obtained a fair and impartial trial, the burden is upon appellant to show " '*even* a "reasonable likelihood" that he . . . [did] not receive a fair trial.' " (*Frazier v. Superior Court* (1971) 5 Cal.3d 287, 295 [95 Cal.Rptr. 798, 486 P.2d 694]; *People v. Welch* (1972) 8 Cal.3d 106, 113 [104 Cal.Rptr. 217, 501 P.2d 225]; *Fain v. Superior Court* (1970) 2 Cal.3d 46, 51 [84 Cal.Rptr. 135, 465 P.2d 23].)

The only evidence before us is the newspaper article itself. The prejudicial impact of the article was minimal. The article was not of a sensational or inflammatory nature; the reporting was factual. (See *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 609 [119 Cal.Rptr. 302, 531 P.2d 1086]; *People v. Witt* (1975) 53 Cal.App.3d 154, 172 [125 Cal.Rptr. 653].) Jacla's role in the incident was not stressed. The article merely mentioned his name in the middle. Neither the incident reported in the press nor the crime for which appellant was to go on trial was of such a shocking nature as would tend to inflame. (*Frazier v. Superior Court, supra; Maine v. Superior Court, supra.*)

After an independent examination of the record, we are satisfied, de novo, there is not even a reasonable likelihood that the pretrial publicity in this case deprived appellant of a fair and impartial trial.

■ IV. *Does the error committed require reversal of the judgment?*

The error committed, as we have explained above, was two-fold—the appellant was shackled throughout the trial; no cautionary instruction was given to the jury to disregard the physical restraints in · its determination of guilt.

■ The threshold question as to whether the error compels reversal is whether the error is of constitutional dimension. If it is not error of constitutional dimension, then the test of reversible error is whether it is reasonably probable that a result more favorable to appellant would

have been reached in the absence of error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) On the other hand, if it is error of constitutional magnitude, then the appropriate standard for review is that before error can be held harmless, the state must show and "the [appellate] court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) The court in *Duran, supra,* applied the *Watson* test and reversed the judgment. Since the court reversed on the lesser standard, it did not have to reach the question of constitutional error; in fact, the court specifically left open the question as to whether such error was of constitutional proportion. (*People* v. *Duran, supra,* 16 Cal.3d at p. 296, fn. 15.)

In our view, the error is constitutional error. It deprived the appellant of due process of law under the Fourteenth Amendment to the United States Constitution.

Every criminal defendant is entitled to a fair and impartial jury in the determination of his guilt. Every criminal defendant is entitled to the presumption of innocence. If, as the court said in *Duran,* "it is manifest that the shackling of a criminal defendant will prejudice him in the minds of the jurors" (16 Cal.3d at p. 290; see also *Kennedy* v. *Cardwell* (6th Cir. 1973) 487 F.2d 101, 107, 111, and cases there cited), then, absent a clear necessity for such physical restraints, the defendant has been deprived of that fair and impartial jury which due process mandates. To hold otherwise would be to make the concept of a "fair and impartial" jury a platitude noble in phrase but hollow of content.

But the problem has a further dimension; it reaches the presumption of innocence that attaches to a defendant in a criminal trial. For, if the jury is prejudiced by the appearance of shackles, the likelihood is that it becomes prejudiced *against* the defendant. To the extent that the jury becomes prejudiced against a defendant by matters completely collateral to any question of guilt, arising through error by the trial court, that prejudice may operate to attenuate the strength of that presumption of innocence which our society pledges to all accused of crime. As the court said in *Cardwell,* quoting from the Supreme Court of Colorado in *Eaddy* v. *People* (1946) 115 Colo. 488, 492 [174 P.2d 717], " 'the presumption of innocence requires the garb of innocence . . . [and] every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man.' " (At p. 104.)

There is a further reason why the error is of constitutional magnitude. The error in trying appellant in shackles was compounded by the trial court's error in failing to instruct the jury to disregard the physical restraints in its determination of guilt. In the absence of such an admonition, we can only speculate as to the effect upon the jury of seeing the appellant in shackles at the counsel table and on the witness stand, in its determination of guilt. Certainly, it didn't add to appellant's credibility as a witness. Conceivably, the jury might have thought appellant had attempted escape because he was guilty and therefore had to be restrained. Of one thing we are confident, the failure to give the admonition did nothing to dispel the prejudice brought about by shackling the defendant.

We conclude that constitutional error occurred at appellant's trial.

■ There remains one further consideration before we decide whether reversible error was committed.

In some situations, constitutional error is deemed to be reversible error per se. (See, e.g., *Payne* v. *Arkansas* (1958) 356 U.S. 560 [2 L.Ed.2d 975, 78 S.Ct. 844] [the use of a coerced confession]; *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] [right to counsel]; *Tumey* v. *Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243] [right to an impartial judge].)[2]

"A fair trial in a fair tribunal is a basic requirement of due process." (*In re Murchison* (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623].) Thus, where a criminal defendant is tried to the court and the court has a financial stake in the outcome, it is a denial of due process, reversible error per se, no matter how clear the evidence that defendant is guilty of the charged offense. (*Tumey* v. *Ohio, supra.*) Nor is it necessary to show actual bias or prejudice in the tribunal for due process is denied "by circumstances that create the likelihood or the appearance of bias." (*Peters* v. *Kiff* (1972) 407 U.S. 493, 502 [33 L.Ed.2d 83, 93, 92 S.Ct. 2163]; *In re Murchison, supra; Tumey* v. *Ohio, supra.*)

---

[2]In *People* v. *Gainer* (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997], the court held that the giving of a particular portion of the so-called *Allen* instruction was reversible error per se as constituting a " 'miscarriage of justice' within the meaning of article VI, section 13, of the California Constitution." (At p. 855.) The court avoided the question of whether there was a due process violation by announcing its holding as "a judicially declared rule of criminal procedure." (At p. 852.)

Our Supreme Court has concluded that a denial of due process under the Fourteenth Amendment is not reversible per se unless a confession was erroneously admitted or "the trial was fundamentally unfair." (*People* v. *Bostick* (1965) 62 Cal.2d 820, 824 [44 Cal.Rptr. 649, 402 P.2d 529].)

It would seem arguable, at the least, that a trial conducted before a jury where (1) the appellant was erroneously shackled throughout the trial; (2) took the witness stand, shackled; and (3) no cautionary instruction was given to the jury to disregard the shackles in determining guilt, renders the trial fundamentally unfair because (a) it deprived the appellant of a fair and impartial jury and (b) it would tend to lessen the force of the presumption of innocence and, therefore, the burden of proof upon the state. "Every procedure which would offer a *possible* temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." (Italics added.) (*Tumey* v. *Ohio, supra,* 273 U.S. at p. 532 [71 L.Ed. at p. 758]; *Estes* v. *Texas* (1965) 381 U.S. 532, 544 [14 L.Ed.2d 543, 551, 85 S.Ct. 1628]; *In re Murchison, supra,* 349 U.S. at p. 137 [99 L.Ed. at pp. 946-947]; see also *Cupp* v. *Naughten* (1973) 414 U.S. 141, 155 [38 L.Ed.2d 368, 378, 94 S.Ct. 396], dis. opn. of Brennan, J.)

Having made the argument, we are constrained to reject it on the authority of *People* v. *Duran, supra.*

In *Duran,* as here, the defendant had been erroneously handcuffed and shackled. In *Duran,* as here, the defendant took the witness stand burdened with the physical restraints. In *Duran,* unlike here, we do not know whether the trial court gave a cautionary instruction with regard to the physical restraints.

The court in *Duran,* as we have indicated, specifically left open the question whether the *Chapman* test or the *Watson* test was the appropriate standard of review for reversible error. The court in its opinion made no mention of due process as reversible error per se nor did it advert to article VI, section 13, of the California Constitution. We infer, therefore, that the court rejected the notion that the error was reversible error per se under the due process clause or under the "miscarriage of justice" provision of the California Constitution.

We apply, therefore, the *Chapman* standard. With that standard in mind, we have carefully reviewed the record and without adumbrating the evidence, we are of the opinion that the error was harmless beyond a reasonable doubt.

In so holding we experience the same reluctance expressed by the court in *People* v. *Prado* (1977) 67 Cal.App.3d 267, 276-277 [136 Cal.Rptr. 521]. But, here, as in *Prado, Duran* compels us to affirm the judgment.

The judgment is affirmed.

King, J.,* concurred.

Scott, Acting P. J., concurred in the judgment.

Appellant's petition for a hearing by the Supreme Court was denied April 20, 1978. Bird, C. J., Mosk, J., and Newman, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.