[No. D015357. Fourth Dist., Div. One. Dec. 8, 1992.]

Conservatorship of the Person of STEVEN NOEL WARRACK.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
STEVEN NOEL WARRACK, Objector and Appellant.

**COUNSEL**

Peter W. Singer, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, R. Mark Beesley and Susan B. Ramsey, Deputy County Counsel, for Petitioner and Respondent.

**OPINION**

**HUFFMAN, J.**—In this case we must determine whether the constitutional right to due process of law prohibits physical restraint of a proposed conservatee during a jury trial under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.)[1] in the absence of facts showing such restraint is manifestly necessary. We conclude fundamental fairness precludes such physical restraint unless the procedures outlined by the Supreme Court in *People* v. *Duran* (1976) 16 Cal.3d 282, 288-291 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1] have been followed.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

Steven Noel Warrack appeals from a judgment following a jury trial which determined he was gravely disabled and ordered reestablishment of his LPS conservatorship. Warrack contends the judgment should be reversed because he was physically restrained in the presence of the jury and that the trial court failed sua sponte to give the jury a cautioning instruction relating to those physical restraints. We find no error in restraining Warrack and find the trial court's failure to instruct harmless on this record. We therefore affirm.

FACTS AND PROCEDURAL BACKGROUND

Since Warrack does not claim the evidence is insufficient to support the jury's finding, we will not summarize the testimony which was used to determine he was gravely disabled.

Warrack's case was set for jury trial September 4, 1991. When the matter was assigned to the trial court, Warrack's counsel raised the issue of physical restraint and made a request for additional peremptory challenges.[2] In so doing, counsel informed the trial court Warrack had previously escaped from the state hospital and for some time thereafter had been held in the state prison hospital. Such information was offered to the trial court in support of counsel's request for additional peremptory challenges.

Thereafter the counsel brought to the court's attention that Warrack was then physically restrained by leather restraining devices on both his wrists and ankles. Counsel acknowledged that during a trial one year earlier Warrack had escaped and had to be captured and subdued by the marshals. Counsel nonetheless contended physical restraints were unnecessary at this time and would be prejudicial in the presence of the jury.

The trial court held a hearing on the issue of restraints. In that hearing Dr. Kenneth J. Naysmith, a psychologist at the San Diego County Psychiatric Hospital, was called to testify. Dr. Naysmith was familiar with Warrack and had seen him on a regular basis. Dr. Naysmith related that 10 days prior to this trial Warrack had become violent at the hospital, had attacked staff, threatened to kill some of the staff, and attempted to stab others with a pen. Warrack had to be physically restrained. Naysmith said Warrack was generally extremely unpredictable and was even more unpredictable at the time of trial. The doctor acknowledged that when Warrack had been in court on August 20, 1991, there had been no problem due to lack of physical restraints. However, the doctor noted Warrack's condition had changed since that date and that Warrack posed a present danger.

---

[2]The trial court denied the request for peremptory challenges, and Warrack has not pursued that issue in this appeal.

The trial court ordered Warrack to be restrained during trial and declined counsel's request to have restraints placed only on Warrack's legs. Counsel did not ask the court to give a cautionary instruction. The court did, however, state counsel would be permitted "fairly wide latitude" in inquiring of jurors on their attitudes with regard to the restraints.[3] No further motions were made with regard to the restraints; however in closing argument both counsel discussed the fact of the physical restraints. Warrack's attorney first brought to the jurors' attention that Warrack had been brought to court in restraints, but stated that the jurors were not to presume him gravely disabled as a result of those restraints. In his argument counsel also makes the only reference in this record regarding the extent of the restraints. Counsel said: "During the first two days of trial, he was brought in here in leather handcuffs and leather foot restraints and with a male nurse sitting there behind him. And how [sic] he is in today, with two women staff people, and he didn't have any cuffs or restraints, and he is walking as free as you and I, you can't speculate why."

In responsive argument, the county counsel, on behalf of the conservator, observed: "Finally there is no evidence at all on Mr. Warrack's restraints, and I have not commented on them, but [appellant's trial counsel] has. I wish only to respond that there has been no evidence in this case on why the restraints were on Mr. Warrack's arms and legs. I have not asked you to draw any inference from those restraints, but I also ask that you remember what you hear from [appellant's trial counsel] about the restraints . . . is not evidence and is not to be considered."

Apparently, after the jury verdict was returned, Warrack engaged in some form of violent outburst. The record reflects simply: "THE CONSERVATEE: You're—I'll kill you. You're dead, motherfucker. I'll kill you when I get out. I'll stab you, fucker, whip your gut[] and I'll punk you, mother fucker. I'll kill you, mother fucker."

The only response reflected in the record from the trial court is: "THE COURT: It's got to be a very difficult time for Mr. Warrack."

Judgment was entered on the jury verdict finding Warrack gravely disabled and ordering reestablishment of the LPS conservatorship. Warrack has filed a timely notice of appeal.

---

[3]The voir dire questioning of the jurors is not part of the record on appeal, and we are therefore unable to determine the extent to which the jurors were questioned on the issue of physical restraints.

DISCUSSION

I

Warrack contends the limitations on the use of physical restraints in criminal trials should be applicable to jury trials in LPS conservatorship proceedings. In response to that contention, we discuss first the nature of LPS proceedings.

■ Proceedings to establish an involuntary conservatorship for a person who is gravely disabled under the LPS Act are essentially civil in nature and therefore procedural rules relating to civil trials are ordinarily controlling. (*Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 147-148 [218 Cal.Rptr. 796]; *Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 548 [200 Cal.Rptr. 262].) LPS proceedings do have some features similar to criminal trials. Most notably, the proposed conservatee may lose his or her freedom as a result of an involuntary conservatorship and may suffer the stigma of a judicial determination that the person is "gravely disabled."

The risk to freedom and the stigma attached to involuntary conservatorship led the California Supreme Court to import two criminal law procedural protections into LPS proceedings. The court in *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 222-224 [152 Cal.Rptr. 425, 590 P.2d 1] determined fundamental due process requires in such proceedings that grave disability be proved by the government beyond a reasonable doubt to a unanimous jury. The court analyzed the risk to prospective conservatees and found it similar to persons who were once committed under the mentally disordered sex offender proceedings. (See, e.g., *People v. Burnick* (1975) 14 Cal.3d 306, 319-322 [121 Cal.Rptr. 488, 535 P.2d 352]; *People v. Feagley* (1975) 14 Cal.3d 338, 351 [121 Cal.Rptr. 509, 535 P.2d 373]; see also *People v. Thomas* (1977) 19 Cal.3d 630, 638 [139 Cal.Rptr. 594, 566 P.2d 228] [relating to civil commitments for narcotics addicts].)

Discussing the LPS proceedings, the court said, "Moreover, any interpretation of section 5350, subdivision (d) as *not* requiring a unanimous jury verdict would render that section unconstitutional as a violation of the equal protection clauses of the California and federal Constitutions. Section 5303 explicitly extends the protection of unanimous jury verdicts to commitment proceedings for imminently dangerous persons. Were gravely disabled persons facing possible commitment not entitled to the same protection, they would have just cause to complain." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 231, original italics, fn. omitted.) The court characterized as fundamental the right to a unanimous jury in such proceedings.

The Supreme Court's decision to apply the unanimous jury and reasonable doubt standards to civil commitment for narcotics addicts, mentally disordered sex offenders, and LPS conservatorships is based on the concept such protections are basic to a fair determination of the possible loss of freedom of a person involuntarily brought into the system.

■ Since LPS proceedings share with criminal trials an interest in a fundamentally fair factfinding process, we inquire next whether the use of physical restraints on the proposed conservatee poses a risk to the fairness of that factfinding process. The principal case dealing with physical restraints in criminal cases is *People* v. *Duran, supra,* 16 Cal.3d 282, 288-290. There, the Supreme Court, applying principles of due process, determined the use of physical restraints on a defendant during trial posed a grave risk of prejudice to the factfinding process: "We believe that it is manifest that the shackling of a criminal defendant will prejudice him in the minds of the jurors. When a defendant is charged with any crime, and particularly if he is accused of a violent crime, his appearance before the jury in shackles is likely to lead the jurors to infer that he is a violent person disposed to commit crimes of the type alleged." (*Id.* at p. 290; see also *Illinois* v. *Allen* (1970) 397 U.S. 337, 344 [25 L.Ed.2d 353, 359, 90 S.Ct. 1057].)

The court in *Duran* held a defendant may not be shackled absent facts on the record which justify the trial court's decision to impose such extraordinary restraints.

We believe the risk to the integrity of the factfinding process caused by the use of physical restraints is just as great in LPS proceedings as it is in criminal—perhaps more so. The proposed conservatee is on trial to determine whether the person is gravely disabled because of mental illness. The image of a person bound hands and feet with leather restraints and closely attended, as in this case, with two male nurses gives an image of a person out of control. That image presented to the lay jurors in the context of a claimed mental illness could well be potent, though unexamined, evidence of disability. Thus, we hold a proposed conservatee in a jury trial under the LPS Act may not be physically restrained unless the trial court follows the procedures outlined in *People* v. *Duran, supra,* 16 Cal.3d 282, 288-290.

■ Having found *Duran* applicable to LPS trials, we examine next the procedures followed by the trial court in this case in order to determine if the trial court erred in ordering physical restraints.

When the issue was presented by counsel, the court inquired of both attorneys and then heard testimony from one of Warrack's treating psychologists. That evidence showed a pattern of escape, violence, and disruptive

behavior. Although Warrack had been in court a short time before the trial without incident, the testimony of the doctor was to the effect Warrack's condition had become worse since that date and he was unpredictable and dangerous. The trial court accepted the testimony and found restraints were necessary to protect the jurors and the other trial participants, as well as to avoid an escape attempt. Thus, the court's decision was based upon facts established by testimony under oath of a knowledgeable percipient witness.

■ Where the person on trial poses a risk of violence, disruption, or escape, the trial court has discretion to order physical restraints. (*People* v. *Allen* (1986) 42 Cal.3d 1222, 1261-1263 [232 Cal.Rptr. 849, 729 P.2d 115].) "[S]hackling is to be employed only as a last resort, based on 'a showing of manifest need for such restraints.' [Citations.]" (*People* v. *Stankewitz* (1990) 51 Cal.3d 72, 94-95 [270 Cal.Rptr. 817, 793 P.2d 23].) A "court's 'shackling decision "cannot be successfully challenged on review except on a showing of a manifest abuse of discretion." ' " (*Id.* at p. 95; see also *People* v. *Sheldon* (1989) 48 Cal.3d 935, 945 [258 Cal.Rptr. 242, 771 P.2d 1330]; *People* v. *Jacobo* (1991) 230 Cal.App.3d 1416, 1426 [281 Cal.Rptr. 750]; *People* v. *Jacla* (1978) 77 Cal.App.3d 878, 884-885 [144 Cal.Rptr. 23].)

■ The trial court was well within its discretion in ordering Warrack physically restrained under the circumstances of this case. There was no error.

## II

■ Warrack contends the trial court had a duty without request to give the jury a cautionary instruction. We agree, but find the error to be harmless.

The court in *People* v. *Duran, supra,* 16 Cal.3d 282, 291-292, held that where physical restraints are visible to the jury the trial court must give a cautionary instruction advising the jurors such restraints are not evidence of the defendant's guilt (disability) and that the jury should not speculate as to the reasons for such restraints. The court erred in failing to so instruct in this case.

Although we find error in the failure to instruct, reversal is not required unless the error is prejudicial. (*People* v. *Jacla, supra,* 77 Cal.App.3d 878, 889-891.)

Here, the trial court allowed counsel to discuss the issue of physical restraints on voir dire. Counsel also were permitted to discuss restraints in closing arguments. Both sides concurred the restraints were not evidence of

disability and that jurors should not speculate as to the reasons for them. In light of the brief appearance of the restraints and the unanimity of counsel as to their lack of evidentiary value, a cautionary instruction would not have given the jury any additional information as to how to deal with the fact of restraints. It is therefore not reasonably probable that a different result would have occurred if the instruction had been given. The failure to give the instruction was harmless error.

## DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Todd, J., concurred.