[Crim. No. 36677. Second Dist., Div. Four. Nov. 3, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD TYLER BURNETT, Defendant and Appellant.

COUNSEL

Mary J. Madsen, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS, J.**—Defendant has appealed from his conviction of four counts of violation of Penal Code section 211, robbery. As to each count, the

jury found true the allegation that he personally used a firearm in the commission of the offenses. Appellant admitted three prior felony convictions. Appellant was sentenced to state prison for a term of 13 years, the sentences on each count to run consecutively to each other and consecutively to any other term appellant may have been serving.

Eyewitness testimony established that on January 24, 25 and 28, 1978, appellant robbed employees of three supermarkets at gunpoint. On January 31, 1978, he and Robert Crane, a codefendant in count IV, robbed a woman at her home. Each of the victims positively identified appellant as the perpetrator, and the sufficiency of the evidence supporting each conviction is not challenged on appeal.

Appellant seeks reversal of his conviction for the following reasons:

1. He was denied the right of effective self-representation because (a) he was subjected to physical restraints throughout the trial, and (b) he was granted inadequate pro. per. privileges to enable him to prepare adequately for trial.

2. He was improperly sentenced: (a) Penal Code section 669 requires all sentences to merge with a life sentence already being served; (b) The reasons for each sentence choice were not separately stated or supported by the facts; (c) The court improperly used the same facts both to aggravate the sentence and to impose consecutive sentences.

I

On November 22, 1978, appellant's motion to proceed in propria persona was granted. Following numerous continuances at appellant's request, the matter came on for trial on October 10, 1979. On that date, before a jury panel was brought into the courtroom, defendant moved the court for permission to remove the leg and waist chains he was wearing. The following dialogue took place:

"[DEFENDANT]: Also in regards to the chains, the leg and waist chains that I'm wearing, if those could be removed during the time of trial, voir diring the jury venire, and to all phases of the trial, if I could have the chains removed.

"

"[THE COURT:] As far as the matter of the chains, what is the situation there?

"THE BAILIFF: I'd have to check with the transportation. I'd have to check with sheriff's transportation.

"THE COURT: What we will do is we will have to check and seek on that, as to whether there is a necessity to have them. If not, why, we will take them off.

"MR. JEAN [the prosecutor]: I do inform the Court that Mr. Burnett has been convicted of first degree murder and related robbery charges in Orange County, and he is presently under a life sentence from Orange County.

"He does have a prior escape conviction in his jacket that he just admitted to.

"THE DEFENDANT: I would also remind the Court, Your Honor, that during the last 21 months, during all my court appearances here, as well as other courts, I've always conducted myself properly in the courtroom. Never been a disturbance or caused any problems.

"THE COURT: We'd hate to see you leave. So as such, why, that is the question.

"MR. JEAN: I can vouch for the fact Mr. Burnett has conducted himself properly in all proceedings.

"THE COURT: He seems to be. The Court will discuss this with the bailiff. And then you will know when the jury comes in what our decision would be. And if you are still brought in in chains, you know the Court has denied it, so your record will be clear. If the situation is that you haven't been, why, there will be no problem.

"THE DEFENDANT: Okay.

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(Short recess taken.)

"THE COURT: In the matter of People against Burnett. The record will indicate the present proceedings are being held outside the presence of the jury.

"Mr. Burnett, the Court reviewed your situation. And if the Court is incorrect, you correct the Court. You are actually convicted of murder at the present time in Orange County, for which you sustained a life sentence. You also had a robbery, which also you were found guilty of, and you were given additional time. You were actually convicted of escape, which you actually just admitted to, as far as your prior in 1972.

"You are presently on trial for four counts of robbery. And you are in the high security cell because of your prior record.

"And if the four counts are proven, you could be sentenced to as much as 10 years for that particular crime.

"We have one bailiff here at the present time. There is no back-up available.

"The Court feels, under the circumstances, with your record, which is all we can go on, it would be dangerous to allow you, with only one bailiff available, to be without your leg chains and arm chains.

"Now, the Court can do this: You—

"That is correct as far as what the Court stated? In other words, I don't think there is any argument about it; isn't that correct, sir?

"THE DEFENDANT: Yes.

"THE COURT: Now, the Court will do this, and the bailiff will cooperate in this respect: If you want to, the Court will bring you out here and you can be seated prior to the time the jury comes in each time. You will be taken out after the jury leaves. But that's all the Court can do at the present time, in view of the problem involved and only one bailiff available.

"So that would at least give you the fact that you'd be seated at the counsel table in that respect. And you'd be brought in before the jury comes in and you would go out after the jury has left each session.

"THE DEFENDANT: Okay.

"THE COURT: That's the best I can do at the moment, sir.

"THE DEFENDANT: One thing, possibly: Could I be handcuffed? Just handcuffed? One removed, the one on the left side here, and affixed to the chair so I could have both hands at the table?

"THE COURT: Fine.

"THE DEFENDANT: You know, it's just too cumbersome this way.

"THE COURT: The bailiff says that he will take the waist chains off and just have the leg chains.

"THE DEFENDANT: Fine.

"THE COURT: So we will do that. That's the best we can do, sir. So we'll do that, then.

"Because all the Court has to go on is your prior record and the fact this is the first time the Court has ever seen you. So under the circumstances, we have to do what is best for the safety as far as the jurors and the public. So that's what we'll do, sir.

"THE DEFENDANT: Okay.

"THE COURT: So the bailiff will take off the waist chains then, and bring you back out here. The jury has been excused. They will be back in about five minutes.

"And we will take you out each time after the jury has left the courtroom and bring you back in before they come back in.

"THE DEFENDANT: All right.

"THE COURT: All right, sir.

"THE DEFENDANT: Fine."

■ Appellant contends that the use of physical restraints interfered with his ability effectively to represent himself and was unjustified. Ap-

pellant relies, as do we, on *People v. Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1], wherein the California Supreme Court established the factors to be considered and the conditions under which physical restraints may be imposed on a criminal defendant during trial. The *Duran* court observed that shackles may both interfere with a defendant's mental faculties and prejudice the minds of the jurors. (*Id.*, at pp. 288, 290.) The court established the rule: "...that a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." (*Id.*, at pp. 290-291.)

Appellant and respondent are in agreement that the *Duran* test of manifest need must be applied to this case. They disagree only on whether such a showing was made. The *Duran* court reviewed and approved several cases wherein a court had physically restrained a defendant throughout trial, including *People v. Burnett* (1967) 251 Cal.App.2d 651, 655 [59 Cal.Rptr. 652], wherein the court was presented with evidence of an escape attempt, and *People v. Stabler* (1962) 202 Cal.App.2d 862, 863-864 [21 Cal.Rptr. 120], in which defendant had attempted to escape from county jail while awaiting trial on other escape charges. However, as appellant points out, in most instances where physical restraints were justified, the defendant had engaged in disruptive behavior in the courtroom.

Further, where prior escape required that a defendant be shackled, the escape was of much more recent origin than that in the present case. In *People v. Burnett, supra,* 251 Cal.App.2d at pages 654-655, defendant had escaped from jail after having been apprised of the charges then pending against him. In addition, he had escaped from county jail some five years earlier. In *People v. Stabler, supra,* 202 Cal.App.2d at page 863, defendant, charged with escape from a prison camp, broke a hole in the jail wall and attempted to escape while awaiting trial. And in *People v. Kimball* (1936) 5 Cal.2d 608, 611 [55 P.2d 483], defendant had threatened to escape from the courtroom and had threatened to injure or kill witnesses during trial. (Cf. *People v. Condley* (1977) 69 Cal.App.3d 999, 1005 [138 Cal.Rptr. 515].)

We know of no case wherein shackling was justified where a defendant's ambulant propensities were demonstrated only by a seven-year-old escape conviction.

Although the trial court cited other reasons for the restraint of appellant, none of those reasons are proper for consideration under *Duran*. The *Duran* court held: "The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion." (*People* v. *Duran, supra*, 16 Cal.3d at p. 291.) The *Duran* court recognized the dangers posed by unruly defendants or those who have expressed an intention to escape, but held: "[W]e cannot condone physical restraint of defendants simply because they are prisoners already incarcerated on other charges or convictions." (*Id.*, at p. 293.)

In considering whether shackling of the defendant in the *Duran* case was an abuse of discretion, the court noted that no reason for the shackling appeared on the record. There was no showing that defendant threatened to escape or behaved violently before coming to court or while in court. "The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints." (*Id.*)

Likewise in this case, the shackling of appellant cannot be justified on the grounds that he had previously been convicted of first degree murder for which he was serving a life sentence, or that he was presently on trial for four counts of robbery. Although defendant was housed in a "high security cell" during trial, the court noted that this was because of his prior record, not apparently because of any violent or disruptive conduct on the part of appellant.

The court's statement that there was only one bailiff in the courtroom, and no backup available, is uncontradicted in the record. However, it cannot serve as justification for physical restraint absent some indication that the defendant was likely to become violent or attempt to escape. The record simply does not support such a conclusion.

In *People* v. *Jacla* (1978) 77 Cal.App.3d 878 [144 Cal.Rptr. 23], defendant was tried in handcuffs and leg irons. The only evidence offered to the court on the issue of the necessity for restraint was that within 48 hours immediately preceding the trial defendant, while at liberty on bail, had been involved in a shooting spree. (*Id.*, at pp. 882-884.) The *Jacla* court concluded that it was error to shackle defendant, interpreting *Duran* to require a showing of the likelihood of escape from the courtroom or a threat of violence or other nonconforming conduct in the courtroom. The court refused to condone consideration of defen-

dant's attempt to evade arrest as evidence of intent to escape. The court concluded: "We conceive *Duran* to hold that it is the defendant's conduct in *custody*, now or at other times [citations], or his expressed intention to escape or engage in nonconforming conduct during the trial that should be considered in determining whether there is a 'manifest need' for shackles." (*Id.*, at p. 884.)

In reaffirming the rule that a defendant cannot be subjected to physical restraint without a showing of manifest need, the Supreme Court in *Duran* cited the "possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand,..." (*People* v. *Duran, supra,* 16 Cal.3d at p. 290.) Those considerations compel the conclusion that the trial judge abused his discretion in ordering the defendant to be physically restrained throughout the trial.

That conclusion is particularly inescapable in this case where defendant acted as his own attorney. Although the record reflects that the trial court imposed the least obtrusive physical restraints possible, nonetheless they prevented appellant from leaving his chair. While it may be true that the chains were not visible to the jury (as was assumed in *People* v. *Zatko* (1978) 80 Cal.App.3d 534, 551 [145 Cal.Rptr. 643]), their effect on appellant was clearly manifest. The record reflects that on numerous occasions the prosecutor approached witnesses with exhibits and photographs, and undoubtedly stood and faced the jury during voir dire, opening statement and closing argument. In direct contrast, appellant conducted the trial confined to his chair. It is well established that the right to counsel includes the right to effective counsel. (*People* v. *Pope* (1979) 23 Cal.3d 412, 424 [152 Cal.Rptr. 732, 590 P.2d 859].) While a defendant who represents himself cannot expect or demand to be on an equal educational or professional footing with counsel for the People, unnecessary restriction on his efforts to represent himself should not be imposed by the trial court. The limitations inherent in self-representation are burdensome enough, without the imposition of unwarranted additional restraint by the court.

■ Having concluded that the court erred in restraining appellant, we must determine whether the error was prejudicial. The *Duran* court did not hold such error to be prejudicial per se, but evaluated the impact of the error, along with others in that trial, to determine that

reversal was required. In the instant case, the evidence against appellant was strong. Under other circumstances, we might find the error harmless. Here, however, two distinguishing features compel reversal. First, appellant did not testify. Whether the election not to testify was based on inhibition produced by the restraints, we cannot tell. Second, appellant was deprived here not only of the right to be free from physical restraints during trial, but his constitutional right to effective self-representation was diminished. Therefore, a new trial is required.

We do not reach the other issues raised by appellant, with the following exception:

Appellant correctly contends that at the time of the offenses committed by him, Penal Code section 669 prohibited the imposition of consecutive sentences on a life sentence. The augmented record reflects that on March 29, 1979, appellant was convicted of eight counts, including first degree murder. For the first degree murder conviction, he was sentenced to life in prison. Although Penal Code section 669 has been amended to allow consecutive sentences following a life sentence, that amendment is effective only as to crimes committed after January 1, 1979. Therefore, in the event defendant is convicted following retrial, any sentences imposed may run consecutively to each other, but must run concurrently with the life sentence defendant is presently required to serve. (See *People* v. *Harvey* (1978) 76 Cal.App.3d 441, 449 [142 Cal.Rptr. 887]; *People* v. *Salas* (1978) 77 Cal.App.3d 600, 608 [143 Cal.Rptr. 755].)

The judgment is reversed.

Kingsley, Acting P. J., and Munoz, J.,* concurred.

A petition for a rehearing was denied December 2, 1980, and the opinion was modified to read as printed above.

---

*Assigned by the Chairperson of the Judicial Council.