THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* UNDRA HOOKER, Defendant-Appellant.

Third District    No. 80-108

Opinion filed May 13, 1981.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant Undra Hooker appeals from his conviction for rape for which he received a sentence of 30 years' imprisonment.

Following a jury trial in the circuit court of Will County, defendant was found guilty of the rape of Lucy Barga. Lucy Barga, age 16, testified that about 9 p.m. on April 3, 1979, she was walking down a street in Joliet when a man grabbed her from behind, put one hand over her eyes, and held a gun to her head with the other hand. He forced her to enter the back of a van where he covered her face with a green stocking cap tied around her eyes. Another man drove the van. After threatening to kill her, both men in the van raped Lucy and finally released her about midnight. She was later examined at a hospital where a vaginal swab and pubic hair samples were taken.

Also testifying for the State was Charles Byas, defendant's half-brother, who said he accompanied defendant as a driver of the van on the night of April 3. He identified defendant as the man who forced Lucy into the van at gunpoint and generally corroborated Lucy's account. He also testified to the circumstances surrounding a subsequent rape of Sandra Hernandez which occurred on April 27, 1979. He admitted having intercourse with both girls. Sandra Hernandez took the witness stand to describe her abduction and rape by defendant and Byas.

Other witnesses described the movements of defendant and Byas on the night of April 3-4, and forensic scientists from the Joliet crime lab testified to the physical evidence relating to hair samples, blood types, and tests for sperm.

During the trial defendant escaped from the Will County jail, and the trial was recessed for three days until defendant was recaptured. Before the prosecution rested, two witnesses described defendant's escape and his subsequent arrest in Chicago Heights, Illinois.

The defense recalled the forensic scientists for additional evidence and also called some police officers who testified to inconsistent statements by the two rape victims. Defendant presented three alibi witnesses who indicated that defendant was with friends between 9 and 12 p.m. the night of April 3 while Byas was gone with the van. In rebuttal the State called a police officer who told of a statement by defendant when he was arrested saying that he had spent the evening of April 3 with his family.

The jury returned a verdict of guilty on the rape charge. At the conclusion of the sentencing hearing, the court imposed a sentence of 30 years, and this appeal followed.

We shall first consider defendant's contention that the trial court erred in declining to hold a hearing upon defendant's motion to suppress the in-court identification of defendant by Sandra Hernandez on the ground that a suggestive pretrial lineup proceeding and a suggestive

pretrial photographic display had tainted any in-court identification. The motion to suppress was denied without a hearing after the trial judge was advised that the same issue had been ruled upon in a separate criminal proceeding prosecuting defendant for the Hernandez rape. In that proceeding, the trial judge (Judge Pistilli) denied defendant's motion to suppress after an evidentiary hearing.

Preliminarily, we note that the State has filed a motion to supplement the record on appeal by adding the report of proceedings of the hearing upon defendant's motion to suppress the identification evidence in the prosecution for the rape of Sandra Hernandez. That motion is taken with the case, and we believe that the transcript is relevant and necessary to our decision of this issue. The motion is therefore allowed. Upon review of the report of the proceedings before Judge Pistilli, we find that he considered defendant's argument that the pretrial photographic procedure was suggestive; he weighed all the relevant factors; and he concluded that the procedure was not unduly suggestive. Judge Pistilli did suppress the lineup identification, not upon the ground that it was suggestive, as defendant has asserted here, but rather upon the ground that defense counsel was excluded. The court then expressly found that the lineup procedure was not suggestive and that there was clear and convincing evidence that Sandra's identification was by independent origin and not influenced by any unnecessarily suggestive procedure.

■■■ As the State points out, the doctrine of collateral estoppel applies to criminal cases as well as civil and serves the laudable purpose of preventing the repeated litigation of the same factual issue. In *People v. Williams* (1975), 59 Ill. 2d 557, 322 N.E.2d 461, the Illinois Supreme Court quoted from *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194, as follows:

> " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit * * *."
> (59 Ill. 2d 557, 560, 332 N.E.2d 461, 462-63.)

The only basis for relitigating a factual issue is where there has been some additional evidence or a "peculiar circumstance" which warrants reconsideration, or where there is an articulable reason for not presenting relevant evidence at the prior hearing. (*People v. Colletti* (1978), 61 Ill. App. 3d 289, 377 N.E.2d 1276.) Defendant argues that an acquittal of defendant in the first proceeding has been held to be a sufficiently "peculiar circumstance" so as to justify a relitigation of a suppression issue and so, until all avenues of appeal have been concluded, defendant's prior conviction for the Hernandez rape cannot be considered "final." This

situation, it is argued, justifies a relitigation of the challenge to the in-court identification of defendant by Hernandez. We think defendant's argument is strained. Defendant was in fact convicted of the Hernandez rape and that conviction should be considered "final" for collateral estoppel purposes. All principles of judicial economy would be violated if we were to remand and require the trial court in the present case to hold a hearing on the same issues as were previously litigated.

■■ Defendant also claims that he was not proven guilty of rape beyond a reasonable doubt because the State's evidence was weak in three respects which, if taken together, would create a reasonable doubt of defendant's guilt. The three aspects of the State's case which defendant attacks are the weakness of the identification evidence, the inconclusiveness of the blood tests and hair tests, and the insufficiency of the corroboration of the accomplice testimony.

In this case the victim could not identify the defendant. His identification as the perpetrator came primarily from his accomplice Byas, and from Sandra Hernandez, the victim of the later rape by defendant and Byas involving a similar method of operation. Hernandez identified both men in court in the instant case, and her identification of the defendant was positive. Her identification of defendant was based upon a brief direct view of the driver of the car in which she was abducted just before he struck her in the face. Actually the car had been following her, and she had looked at it and its driver several times before she was assaulted. Defendant claims her in-court identification was tainted by a suggestive pretrial identification procedure involving a lineup which was suppressed and a "questionable" photographic identification, but those would be considerations going to the weight to be given the testimony by the trier of facts—here, the jury.

Defendant makes a similar contention as to the evidence of his escape during trial, suggesting that there could have been motivating factors other than guilt and that it was unnecessary and highly prejudicial to the State's case. Again, defendant is arguing the weight to be given the evidence. The same is true of defendant's arguments concerning the gun which was found in the apartment where he was arrested. Lucy Barga testified that the chrome part of the gun resembled the gun she had seen from under the cap covering her eyes during her captivity in the van, and Byas also identified the gun as the one defendant had used to threaten Lucy. Defendant offers other explanations for the presence of the gun in the apartment which would be consistent with his innocence, but nonetheless, the evidence relating to the gun does corroborate the testimony of the accomplice Byas and thus renders the accomplice testimony more credible.

Defendant also insists that Sandra Hernandez' testimony was suspect

because she contradicted Byas as to who was driving. She said defendant was the driver of the car while Byas claimed to have been driving.

These weaknesses in the State's identification evidence were matters for the jury to consider. The court may not encroach upon the function of the trier of the fact which is to weigh the credibility of the witnesses and to assess the evidence. (*People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285; *People v. Slavin* (1978), 66 Ill. App. 3d 525, 383 N.E.2d 1303.) As to discrepancies in the testimony of two or more witnesses, it is the task of the trier of fact to weigh those discrepancies, and if they are so minor as not to detract from the reasonableness of the witnesses' story as a whole, the testimony may be found sufficient to sustain a conviction. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179.) When these principles are applied to the case before us, we find the identification of defendant by Byas to have been sufficient, particularly when considered in conjunction with the corroborating evidence which we consider was sufficient.

■■ Defendant additionally asserts that the scientific evidence concerning hair and blood types create a reasonable doubt as to his guilt because the physical evidence failed to establish that defendant was the assailant. For example, no pubic hair resembling that of defendant was found on the towel used during the incident, or on Lucy's clothing or her person. Semen found on the towel, a blanket and the vaginal swab, was tested and showed that the secretions were from persons with Type B and Type A blood. Lucy has Type B blood while Byas and defendant are both Type O. Type A must have come from some person with either Type A or AB blood and could not have come from Lucy, Byas or defendant. Defendant argues that the absence of Type O secretion activity and the presence of Type A strongly indicates that someone other than defendant assaulted Lucy. The physical evidence in the Hernandez rape case similarly failed to establish defendant's role in a conclusive manner. However, neither did the evidence exonerate defendant. The forensic scientists who testified stated that defendant could not be ruled out as the person who raped Lucy or Sandra. Certain unidentified Negroid hairs found in Lucy's clothing could have been defendant's body hairs of which no samples were furnished to the crime lab. Also, the failure to find Type O activity on the vaginal swab was stated as not excluding a Type O person because the swab might not have picked up all the activity and also because some Type O people have such a low activity in their secretions that the test may not pick it up. Again, defendant's contentions go solely to the weight of the evidence.

■■ Defendant also insists that his alibi defense refutes the State's case, but that defense was impeached by defendant's own statements made at the time he was arrested when he said he had been at a different location

the night before. As we said in *People v. Sherman* (1980), 87 Ill. App. 3d 937, 940:

> "We decline to substitute our judgment for that of the jury which heard the evidence and had the opportunity to observe the demeanor of the witnesses, something which we are unable to do with a cold record."

Defendant has cited and discussed a number of cases where a conviction for rape was reversed because of insufficient identification, particularly where the complaining witness lacked a sufficient opportunity to observe her assailant. (*E.g., People v. Reese* (1973), 14 Ill. App. 3d 1049, 303 N.E.2d 814; *People v. Thompson* (1970), 121 Ill. App. 2d 163, 257 N.E.2d 197.) Although defendant's authorities bear some superficial resemblence to the Hernandez rape, none of the cases involve any substantial similarity to the instant case. Here the identification of defendant by Hernandez was corroborative and was not required to be of sufficient weight to establish defendant's guilt beyond a reasonable doubt. Defendant's cases are distinguishable upon their facts. We believe the evidence in this case was sufficient to establish defendant's guilt, and the verdict of guilty was not erroneous.

Defendant also contends that he was deprived of his right to a fair trial by several instances of prosecutorial misconduct which evidenced deliberate bad faith. Four specific occurrences are set forth, the first of which involved the prosecutor's rebuttal argument. After speaking of the fact that blood Type A activity had been found in connection with the post-rape examination of Lucy and was unexplained and that Type B activity had been identified in connection with Sandra and was unexplained, the prosecutor hypothesized about a man with Type AB blood who had sex with each girl. He then stated:

> "It's there, I will grant you it's there. This is not a trial of those two girls and I will not put those girls back on that stand in light of—."

At that point defense counsel interposed an objection that the prosecutor was trying to explain why he didn't produce other evidence or call other witnesses. The prosecutor denied saying that, but the court sustained the objection and instructed the jury to disregard the last remark. Later the court again advised the jury not to consider the argument that the State was not going to call anybody back and that they were to consider only the evidence which the State had presented at trial. Defendant insists that the action of the court in sustaining defendant's objection and instructing the jury to disregard did not cure the error and that the argument was prejudicial and an intentional act of prosecutorial misconduct.

■■ Considering the half-finished statement that was objected to and considering its context, we cannot agree that the error was so serious that it was not cured by the court's ruling that the statement was to be disre-

garded. The statement was ambiguous and capable of more than one interpretation. We see nothing to indicate intentional prosecutorial misconduct, and hence, we would not be justified in reversing the defendant's conviction for such reason. See *People v. Dillard* (1979), 68 Ill. App. 3d 941, 386 N.E.2d 416; *People v. Atkins* (1976), 40 Ill. App. 3d 182, 350 N.E.2d 761.

■■ The second claim of prosecutorial misconduct cited by defendant is based upon several statements made in the course of closing argument which are characterized as expressing the prosecutor's personal opinion of defendant's guilt, misstating and misusing some impeachment evidence, and appealing inflammatorily to the jury. We need not detail these claimed errors because we find that defendant did not object to any of them at trial, so any error was waived. Furthermore, considering the statements either singly or together, we cannot call them plain error.

■■ Next defendant contends that it was prejudicial error for the prosecutor to fail to correct a police report which had been furnished to the defense pursuant to discovery and upon which defense counsel relied in cross-examining the accomplice witness. Byas had testified on direct that he was home on extended leave from the Army. During cross-examination, he was asked if his leave had not become desertion. He denied that and explained that he was "in personnel control facility awaiting orders for a hardship discharge." Defendant argues that he was embarrassed and prejudiced in the eyes of the jury by the mistake which derived from an erroneous police report and that the prosecutor must have known of the error since he immediately objected. There is no evidence that the prosecutor knew of the report's inaccuracy, and we fail to see that Hooker's defense was prejudicially affected by failure to impeach this State's witness on the basis of a misunderstanding regarding his army record. Furthermore, it appears from the record that defense counsel continued to question Byas regarding the subject after he was informed that the charge of desertion was erroneous. Thus, any real embarrassment was of his own doing.

Additionally defendant contends that it was prejudicial error for the prosecutor to attempt to place "suggestive identification testimony" before the jury in a manner that forced defendant to object and thus to appear in the eyes of the jury to be concealing evidence. While questioning Lucy, the prosecutor asked the court for a voice identification procedure, which was not allowed. This and other questions are cited by defendant as intentionally inviting his objections. Without reciting the details of this contention, we have examined the record and conclude that the efforts to buttress the State's case were, at most, further evidence of a vigorous prosecution, and cannot be condemned as demonstrating bad faith.

Defendant relies upon *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 394 N.E.2d 496, in support of his contention that this cause should be reversed without a remand because of prosecutorial overreaching which went beyond a simple error. We must, of course, reject this argument outright, since we have concluded that reversible error did not occur.

■■ Defendant further contends that he was denied a fair trial when the trial court denied his motions *in limine* to exclude evidence of other crimes and allowed the State to introduce such evidence at trial. The particular crime which was the subject of the pretrial motion *in limine* was the rape of Sandra Hernandez which occurred after the rape of Lucy and which was admitted to show *modus operandi*. The State submitted a list of similarities between the two attacks. Defendant discusses the evidence in great detail as he undertakes to establish that the attack upon Sandra should not had been admitted.

Evidence of a separate crime which tends to show motive, intent, identity, absence of mistake, or *modus operandi* is admissible. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The question in each case is whether a comparison of the acts taken as a whole in both offenses demonstrates a common design and the same *modus operandi*. (*People v. Osborn* (1977), 53 Ill. App. 3d 312, 368 N.E.2d 608.) Where the relevancy of the other crime outweighs any possible prejudice to the defendant occasioned by its admission into evidence, it may be admitted. (*People v. Dorn* (1977), 46 Ill. App. 3d 820, 361 N.E.2d 353.) It would unduly lengthen this opinion to discuss the great many factual similarities of the two sexual assaults. We conclude the attacks were sufficiently similar to permit the trial court to admit evidence of the attack upon Sandra Hernandez.

■■ During the trial, after defendant's escape, recapture, and return to Will County for continuation of his trial, defense counsel made a motion *in limine* to exclude evidence of his escape and the circumstances of his recapture. The motion was denied, and the State then presented evidence describing how police found defendant hidden in the South Track Lounge in Chicago Heights, Illinois, at 4:40 a.m. Defendant now argues that this evidence revealed the commission of, not only the crime of escape, but also of burglary. He argues that the burglary does not come within any of the exceptions to the rule excluding evidence of other crimes. The State responds that it was necessary to explain the circumstances of defendant's recapture to negate any inference that he may have turned himself into the police and that the evidence did not establish a burglary, in any event, since the testimony only revealed that defendant was found hiding in a tavern. We agree. Since the evidence of defendant's recapture was necessary to demonstrate defendant's mental state, we find no error.

For the reasons stated, we find that defendant's conviction should be affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.