[Civ. No. 61239. Second Dist., Div. Four. July 8, 1981.]

HERBERT SOLOMON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Bruce A. Hoffman and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Donald J. Kaplan, Deputy District Attorneys, for Real Party in Interest.

OPINION

FILES, P. J.—This is a petition seeking a writ of prohibition for pretrial review of respondent court's denial of defendant's motion to dismiss under Penal Code section 995. Petitioner contends (1) that the evidence adduced at his preliminary examination was insufficient to establish probable cause for commitment and (2) that he was not legally committed because he was handcuffed during the proceeding.

The procedural facts are not in dispute. Samuel Solomon and Herbert Solomon (petitioner) were jointly charged with armed robbery and were brought before a municipal court judge for a preliminary examination. Before any evidence was received this occurred:

"MR. MENASTER: (counsel for defendant) I object to my client being handcuffed to the chair. I don't see why he has to be shackled in the courtroom. I think it is clearly impermissible.

"THE COURT: The motion is denied. One bailiff with two defendants in custody would seem to be sufficient reason. It is not a jury trial. I don't see any egregious difficulties here. If he wishes to be handcuffed to the chair with the other hand so he can use one hand for writing, I would accommodate that request.

MR. MENASTER: I don't want him handcuffed at all. The motion is to have him dehandcuffed.

"THE COURT: I understand, and that is denied."

At the conclusion of the evidence counsel for petitioner stated "I would move to dismiss on the ground that my client was shackled throughout the preliminary hearing." Argument on the sufficiency of the evidence followed, and the court held both defendants to answer in the superior court. Nothing else was said about the handcuff in the course of the preliminary examination.

■ The evidence received at that examination supported a finding that the following occurred:

On September 30, 1980, at about 3 a.m. Samuel and Herbert Solomon walked into a house and proceeded directly to a bedroom where

three or four persons were conversing. Samuel pulled out a revolver and said "Hold it. This is a stickup."

One of the persons in the house, Mathis, started to walk out. Herbert followed him and told him to have a seat and be cool.

Samuel ordered one of the men in the bedroom, Tate, to put his head on the floor. Tate heard someone ask him "Whose car is that outside?" Tate said the car was his. Samuel removed a ring from Tate's finger and someone took Tate's car keys.

Shortly after that Herbert walked out onto the porch of the house and threw some keys towards three men who were standing outside. The three men went to Tate's car and opened it and were looking inside it when a police car approached, whereupon the three men ran. At about the same time Samuel and Herbert ran out of the house. Samuel pulled a revolver from under his belt and placed it on the ground, where one of the officers recovered it. Herbert and Samuel were detained and then arrested upon the statements made by Tate and Mathis. Tate's ring was found in Samuel's pocket.

This evidence is adequate to support a finding of a reasonable and strong suspicion that Herbert (petitioner) and Samuel were accomplices in a robbery. Such evidence is sufficient to support the magistrate's decision. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal. Rptr. 581, 432 P.2d 197].)

We consider next the objection that petitioner had been handcuffed during the course of the preliminary examination.

In *People* v. *Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1], the Supreme Court laid down some principles governing the physical restraint of a defendant in a jury trial. Although the *Duran* opinion emphasizes the possible prejudice in the minds of the jurors, it also calls attention to other values which are involved, particularly "the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand ...." (16 Cal.3d at p. 290.)

Recognizing that, in some circumstances, physical restraint in the courtroom is necessary and proper, the *Duran* court established this

prerequisite to the use of such restraint (at p. 291): "In the interest of minimizing the likelihood of courtroom violence or other disruption the trial court is vested, upon a proper showing, with discretion to order the physical restraint most suitable for a particular defendant in view of the attendant circumstances. The showing of nonconforming behavior in support of the court's determination to impose physical restraints must appear as a matter of record .... The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion."

Although the *Duran* opinion was written in the context of a jury trial it has application to other proceedings as well. Respect for the dignity of the individual and the court are values to be preserved whether or not a jury is present.

The *Duran* opinion quotes, among other authorities, Penal Code section 688, which reads: "No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."

■ The reasoning of *Duran* forbids physical restraint even at a preliminary examination in the absence of a showing of good cause.

In the present case, having two defendants charged with armed robbery in a courtroom with only one bailiff was indeed good cause for some concern about the security of the courtroom and the safety of the persons present. But the record does not indicate that either the bailiff or the magistrate had made any inquiries or had received any information about the two defendants or their propensities other than the nature of the offense charged in the complaint. So far as the record shows, the bailiff may have handcuffed the defendants to their chairs for the very sensible reason that he did not know anything about them except that they were prisoners in his custody. But the *Duran* standard does not permit the court to countenance physical restraint in the courtroom without some further showing of need. If the magistrate believed that a single bailiff was insufficient to guard prisoners who had not yet shown "nonconforming behavior," his only recourse under the *Duran* standard was to send for more bailiffs.

In the situation presented here the options were to (1) ask for additional information which might justify physical restraint of the

defendants, or (2) send for additional officers capable of maintaining security without handcuffing the defendants, or (3) order the handcuffs removed. The magistrate's failure to do so violated the standard established by *Duran.*

■ The remaining issue is whether that error requires us to order that the robbery case be dismissed.

The writ of prohibition is available as a remedy when an error in the preliminary examination is such that the reviewing court must conclude that the commitment was unlawful. (See *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 874 [59 Cal.Rptr. 440, 428 P.2d 304].) But not every error in the course of the preliminary calls for a pretrial dismissal of the information. (See, e.g., *People* v. *Flemmings* (1973) 34 Cal.App. 3d 63, 66 [109 Cal.Rptr. 661]; *People* v. *Wright* (1969) 2 Cal.App.3d 732 [82 Cal.Rptr. 859].)

In the present case there is no basis for any contention that handcuffing petitioner to the chair influenced the decision-making process in any way. There was no jury to be impressed, and there is no reason to assume that the municipal court judge sitting as a magistrate was influenced by the fact that the bailiff thought it prudent to use handcuffs when he had responsibility for two prisoners. Our procedural system entrusts to professional judges a great deal of information which a jury is not permitted to know about, e.g., prior convictions, inadmissible confessions and hearsay received only for probable cause to arrest. Appellate courts ordinarily presume that a judge is capable of weighing the admissible evidence without being prejudiced by extraneous matters. (See *In re Hernandez* (1966) 64 Cal.2d 850 [51 Cal.Rptr. 915, 415 P.2d 803].)

Counsel for petitioner has not asserted either at the preliminary or in this court that his client's decision not to testify was influenced by the handcuff. It is unusual for a defendant to testify at the preliminary, and we cannot assume on this record that he desired to do so in this case.

In the cases involving excessive restraint of a defendant in a jury trial, the reviewing courts have not treated this circumstance as requiring a reversal per se.

In the *Duran* case (16 Cal.3d at p. 295) the Supreme Court did not hold that shackling the defendant during a jury trial necessarily compelled a reversal of the conviction. Instead, the *Duran* court considered

whether the physical restraint, combined with errors in excluding evidence, were prejudicial, and concluded that it was reasonably probable that in the absence of those errors a result more favorable to the defendant would have been reached. On that ground the judgment was reversed.

In each of two subsequent decisions applying *Duran* standards, the Courts of Appeal declared that the trial court had abused its discretion in allowing the defendant to be shackled in the presence of the jury, but also held that the error, considered in the light of the whole record was not prejudicial. Accordingly, in those cases convictions were affirmed. (*People* v. *Prado* (1977) 67 Cal.App.3d 267, 274 [136 Cal.Rptr. 521]; *People* v. *Jacla* (1978) 77 Cal.App.3d 878, 887 [144 Cal.Rptr. 23].)

But in *People* v. *Burnett* (1980) 111 Cal.App.3d 661 [168 Cal.Rptr. 833], this court reversed a conviction because the defendant, acting as his own attorney while shackled to a chair, was found to have been handicapped in his efforts to represent himself.

In the present case it is manifest that petitioner suffered no prejudice other than the indignity of sitting handcuffed to a chair during the course of the preliminary examination. We have already pointed out that the evidence was sufficient to hold him to answer. Granting the relief prayed—to order dismissal of the information—would leave the prosecutor free to refile the charge with the probability that petitioner would again be held to answer. (Pen. Code, § 999; *People* v. *Van Eyk* (1961) 56 Cal.2d 471, 477 [15 Cal.Rptr. 150, 364 P.2d 326].) The net effect of a dismissal would be to put the prosecutor, the public defender, the witnesses and the municipal court to the effort and expense of another proceeding, and would further delay the ultimate determination of petitioner's guilt or innocence. Such self-flagellation of the justice system would neither expunge the indignity which petitioner has heretofore suffered nor advance any proper objective of society.

The petition is denied.

Kingsley, J., and Woods, J., concurred.

A petition for a rehearing was denied July 28, 1981, and petitioner's application for a hearing by the Supreme Court was denied September 2, 1981.