[Crim. No. 44535. Second Dist., Div. Seven. June 22, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES HALL, Defendant and Appellant.

540

COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Lisa B. Lench, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JOHNSON, J.—

### FACTS AND PROCEEDINGS BELOW

Someone killed Adolph Clarke. The 88-year-old man was found lying on his stomach in his bedroom. His head was wrapped in a sheet. His hands were tied behind his back. A cloth was tied to one ankle. His larynx was broken. His back was broken. He did not commit suicide.

The defendant admitted to police that he and two other men, Dixon and Taylor, had forced their way into Clarke's apartment to rob him. Dixon knocked Clarke down and began to tie his hands and beat him. At the same time defendant tied the old man's feet. Defendant and the others then took money and other property belonging to Clarke and left.

Following a preliminary hearing, a three-count information was filed against defendant charging him with murder, robbery and burglary. The murder count alleged as a special circumstance that the killing occurred while defendant was engaged in the commission of a robbery and burglary. (Pen. Code, § 190.2, subd. (a)(17).)

Subsequently defendant was determined to be incompetent to stand trial and committed to Camarillo State Hospital until such time as he should regain mental competency. While at Camarillo defendant "walked away" from the grounds. He remained at large for about five months. His recapture was somewhat dramatic. Over defendant's objection, the events were described to the jury. About 20 police officers surrounded the house where defendant was staying. Using a public address system, one of the officers ordered defendant to come out of the house. When defendant did not come out, tear gas canisters were shot into the house. When defendant still did not come out several officers entered the house. Eventually defendant was found hiding in the attic under some insulation. Largely because of this escape from custody the trial court required defendant to wear leg chains throughout the trial.

In addition to his admissions to the police, the jury heard testimony from two witnesses about statements defendant made to them regarding the

robbery of Mr. Clarke. Beverly Armstrong testified that the night after Mr. Clarke was killed defendant told her he had to leave town because he and Paris Dixon had killed Mr. Clarke. Sarah Franklin testified that on the night of the robbery and murder defendant, Dixon and Taylor came to her house with a television, phonograph and other items. (The phonograph and some of the other property were later identified as having belonged to Mr. Clarke.) Ms. Franklin saw blood on Dixon's clothing. She heard defendant say to Dixon, "Why did you stomp him? I already f. . .d him up." On cross-examination, Ms. Franklin contradicted her earlier statements in court and to the police and asserted for the first time defendant had confessed to her that he had personally murdered Mr. Clarke. Defense counsel asked why she waited so long to mention this confession and Ms. Franklin replied she hated defendant and wished to see him dead.

Defendant was convicted on all three counts and the special circumstance allegation was found true.

## ISSUES

1. Did the trial court err in requiring defendant to wear leg chains throughout the trial?

2. Did the trial court err in allowing testimony describing defendant's recapture following his escape from Camarillo?

3. Was Sarah Franklin an incompetent witness?

4. Did the trial court properly instruct the jury on the question of intent for purpose of the special circumstances allegation?

## DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion by Requiring Defendant to Wear Chains During the Trial.*

Our Supreme Court has held no person charged with an offense can be subject to physical restraints, including leg irons or chains, unless there is a showing of "manifest need" for such restraints. (*People* v. *Duran* (1976) 16 Cal.3d 282, 290-291 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1].) ▮▮▮ While we believe the showing of a need to restrain the defendant in this case was marginal, we do not find that the restraint constituted a "manifest abuse of discretion." (*Id.* at p. 293, fn. 12.)

The considerations supporting the restraint were that defendant had escaped from Camarillo State Hospital while these charges were pending

against him, *People* v. *Burnett* (1967) 251 Cal.App.2d 651, 654, 655 [59 Cal.Rptr. 652]; *People* v. *Stabler* (1962) 202 Cal.App.2d 862, 863-864 [21 Cal.Rptr. 120]; *People* v. *Pitcock* (1982) 134 Cal.App.3d 795, 800-801 [184 Cal.Rptr. 772]; the escape was fairly recent, *People* v. *Pitcock, supra,* 134 Cal.App.3d at page 800; defendant had escaped from custody once before at some unspecified time, *Pitcock, supra,* at page 800 and defendant was charged with crimes of violence—murder and robbery. (*People* v. *Frausto* (1982) 135 Cal.App.3d 129, 134-137, 147-148 [185 Cal.Rptr. 314].)

The considerations opposing restraint were that defendant had not committed any act of violence in his escape from Camarillo—he had simply walked away (cf. *Pitcock, supra,* 134 Cal.App.3d at p. 800); he had not indicated any ambulant or violent propensities during pretrial proceedings (cf. *People* v. *Kimball* (1936) 5 Cal.2d 608, 611 [55 P.2d 483]; *People* v. *Jacla* (1978) 77 Cal.App.3d 878, 884 [144 Cal.Rptr. 23]); it has been held that the mere fact the defendant is charged with a violent crime is insufficient reason to impose restraints, *Duran, supra,* 16 Cal.3d page 293; *People* v. *Burnett* (1980) 111 Cal.App.3d 661, 668 [168 Cal.Rptr. 833] and there were less restrictive alternative available such as bringing in a second bailiff. (*Duran, supra,* 16 Cal.3d at p. 291, fn. 8.)

The record reflects some potential jurors saw the defendant in leg chains on one occasion, briefly, when he was brought into the courtroom at the beginning of voir dire. A comment by defense counsel indicates only one or two of the jurors finally selected for the panel saw the incident. Such brief observations have been generally held not prejudicial. (*Duran, supra,* p. 287, fn. 2.) Although the trial court denied the request to remove the leg chains the court acceded to the request that defendant be brought into the courtroom before the jury entered and allowed to leave after the jury had departed. Thereafter, the trial was conducted with defendant seated during the times in which the jury was present. Thus, the court employed the least visible restraints and there is nothing in the record to indicate jurors were aware, after the first encounter, that defendant was under restraint. (See *Duran, supra,* p. 291, fn. 9, 292; *People* v. *Zatko* (1978) 80 Cal.App.3d 534, 551 [145 Cal.Rptr. 643].) Given these factors and the considerations supporting the restraint of the defendant, we find no abuse of discretion on the part of the trial court.

B. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of the Circumstances Surrounding Defendant's Recapture After His Escape From Camarillo.*

Defendant concedes evidence of his recapture is relevant to his consciousness of guilt. But, he contends, allowing testimony as to the details

of his recapture (see p. 542, *ante*), was highly prejudicial and should have been excluded under Evidence Code section 352.

We have found no California case directly on point. ■ However, several cases have upheld the admission of evidence of the defendant's conduct in avoiding arrest as relevant circumstantial evidence tending to show guilt. (*People* v. *Wong* (1973) 35 Cal.App.3d 812, 831 [111 Cal.Rptr. 314]; *People* v. *Cartwright* (1980) 107 Cal.App.3d 402, 418 [166 Cal.Rptr. 37] and see *People* v. *Ellis* (1922) 188 Cal. 682, 693 [206 P. 753]; " 'It was never doubted that the conduct of a suspected party when charged with a crime may be put in evidence against him when it is such as an innocent man would not be likely to resort to.' " quoting *People* v. *Arnold* (1880) 43 Mich. 303 [5 N.W. 385, 387].)

We have found two sister state opinions in which the circumstances of the defendants' capture were admitted to show guilty knowledge. (See *Erickson* v. *State* (Ind. 1982) 439 N.E.2d 579, 581; *People* v. *Hooker* (1981) 96 Ill.App.3d 127 [421 N.E.2d 301, 307].) In both cases, as in the case at bench, the defendant hid from the police in an attempt to avoid capture. *Hooker* is most similar to the case at bench because Hooker like the defendant here escaped from custody while the instant charges were pending against him. The *Hooker* court reasoned "it was necessary to explain the circumstances of defendant's recapture to negate any inference that he may have turned himself in to the police . . . ." (421 N.E.2d at p. 307.)

■ While it is true the circumstances surrounding the capture of the defendants in *Erickson* and *Hooker* were not as dramatic as those in the case at bench, it is also true the prosecutor here handled this evidence in a low-key fashion. He did not play to the jury on this matter. There was no reference to a SWAT Team exercise or any other attempt to sensationalize the event. His reference to the incident in his closing argument was brief and matter-of-fact referring only to the link between escape, recapture and knowledge of guilt. The details of the capture were not mentioned.

We find the admission of this evidence not unfairly prejudicial to the defendant.

C. *The Record Does Not Show Sarah Franklin Was an Incompetent Witness.*

Defendant contends Sarah Franklin's testimony should have been stricken because she was incompetent in the sense she did not understand the duty of a witness to tell the truth. (Evid. Code, § 701, subd. (b).)

■ A witness is presumed competent in the absence of a showing to the contrary. (*People* v. *Craig* (1896) 111 Cal. 460, 469 [44 P. 186]; Witkin, Cal. Evidence (2d ed. 1966) § 768.) ■ We have reviewed Ms. Franklin's testimony. She gives the impression of being emotionally unstable and biased against the defendant. She may even have been lying about defendant's alleged confession to the murder. But this does not translate into incompetency. Whether she was communicating accurately and truthfully were questions of credibility to be resolved by the jury. (*People* v. *Knox* (1979) 95 Cal.App.3d 420, 431 [157 Cal.Rptr. 238].)

D. *The Court's Instruction to the Jury Regarding Intent to Commit or Aid in the Commission of Murder Satisfied the Requirements of Penal Code Section 190.2, Subdivision (b) and Carlos v. Superior Court.*

At the time this case was tried the law was unsettled as to whether the finding of the special circumstance of felony murder required a finding of intent to kill or to aid in the commission of a killing. The trial court anticipated *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] by not only giving instructions which incorporated the intent requirement of section 190.2, subdivision (b)[1] but by giving a special instruction presented by the defendant which stated: "Before you may find the special circumstances allegation to be true, you must be satisfied beyond a reasonable doubt that Charles Hall's conduct at the time the crimes were being committed was intended to aid and abet the killing of Adolph Clarke." (See *Carlos, supra,* 35 Cal.3d at p. 135.)

Defendant does not challenge the giving of this instruction. Rather, he challenges the court's refusal to give three other instructions he proposed on this same issue.[2]

---

[1]CALJIC No. 8.80 (1981 rev.) provides in relevant part: "If defendant _____ was not the actual killer, it must be proved beyond a reasonable doubt that he intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree before you are permitted to find the alleged special circumstance of that first degree murder to be true as to defendant, . . . ."

The court also gave the following special instruction: "To find that the special circumstances referred to in these instructions as murder during the commission or attempted commission of a robbery or burglary are true, each of the following facts must be proved: [¶] 1. That the murder was committed during the commission or attempted commission of a robbery or burglary. [¶] 2. That the defendant, whether or not the actual killer, intentionally aided, abetted or assisted any actor in the commission of murder in the first degree."

[2]Defendant did not raise below or on appeal the sufficiency of the aider and abettor instructions, CALJIC Nos. 3.01, 8.27. (See *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 647 P.2d 1318].) We will not consider the issue in this opinion. (*People* v. *Murphy* (1959) 173 Cal.App.2d 367 [343 P.2d 273]; *People* v. *Hillery* (1974) 10 Cal.3d 897, 900 [112 Cal.Rptr. 524, 519 P.2d 572].) We note in passing that the special instruction quoted above may well have cured any defect in the CALJIC instructions, (cf. *Beeman, supra,* 35 Cal.3d at p. 562) and under the facts of this case the error in giving the CALJIC instructions was harmless.

■ "It is elementary that the court should instruct the jury upon every material question upon which there is any evidence deserving of any consideration whatever." (*People* v. *Burns* (1948) 88 Cal.App.2d 867, 871 [200 P.2d 134].) ■ ■ The court has no duty, however, to correct a proposed instruction which is partially incorrect (*People* v. *Wagner* (1924) 65 Cal.App. 704, 720 [225 P. 464]) and must avoid giving instructions which are inconsistent or would tend to confuse the jury. (See, e.g., *People* v. *Dail* (1943) 22 Cal.2d 642, 653 [140 P.2d 828].)

Defendant's first proposed instruction provided that in order to find the special circumstance of felony murder the jury must find "the defendant specifically intended to kill Adolph Clarke." This instruction was properly refused because it misstates the law. As section 190.2, subdivision (b) and *Carlos* make clear, the special circumstance of felony murder "require[s] an intent to kill *or to aid in a killing.*" (*Carlos, supra,* 35 Cal.3d at p. 135, italics added.) The defendant need not have had the specific intent to commit a killing. The intent requirement is satisfied if he knew Clarke's killing was planned by one of the robbers and that in holding Clarke down while another beat him he was facilitating that killing. (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 960 [127 Cal.Rptr. 135, 544 P.2d 1335]; *People* v. *Beeman, supra,* 35 Cal.3d at p. 558.)

Defendant's second rejected instruction stated, "In the case before you conduct which is *designed* merely to aid or abet the commission of a robbery or burglary, but not a killing, does not establish the truth of the special circumstances allegation." (Italics added.) This instruction was properly refused because it would tend to confuse and mislead the jury and because the gist of the instruction was already covered by the defendant's special instruction the court agreed to give. The jury was already being instructed that a finding of special circumstances requires proof of intent to aid and abet the killing of Adolph Clarke and that intent can be proved in certain ways. (CALJIC No. 3.34.) To suddenly inject the concept of "design" in place of intent would add an imprecise and irrelevant element into the special circumstances crucible. Moreover, the defendant's special instruction accepted by the court made clear that intent to kill or aid in a killing, not merely a robbery or burglary, was required in order to find special circumstances.

■ The final instruction proposed by the defendant would have instructed the jury, "If you find that Charles Hall personally killed Adolph Clarke, before special circumstances may be found true, you must also be satisfied beyond a reasonable doubt that the killing was intentional." While this instruction correctly states the law as found in *Carlos, supra,* 35 Cal.3d at page 135, failure to give this instruction did not prejudice the defendant.

As noted above, the court did instruct the jury in language consistent with section 190.2, subdivision (b) that it must be proved, ". . . the defendant whether or not the actual killer, intentionally aided, abetted or assisted any actor in the commission of murder in the first degree." Although this language is admittedly ambiguous (see *Carlos, supra,* 35 Cal.3d at pp. 141-142, fn. 10), when taken together with CALJIC No. 8.80 and the defendant's special instruction that was given, the message to the jury was clearly that proof of intent applies to actual killers and accomplices alike.

Any defect in the intent instruction with respect to the actual killer was harmless error. As discussed above, the evidence established the defendant was an active participant in the killing of Adolph Clarke—holding him down and tying his feet while Dixon beat and kicked him—and that the killing was no accident. Except for the testimony of Sarah Franklin, the evidence does not support a finding the defendant was the actual killer. Therefore, the court's failure to give the requested instruction may have worked to the defendant's advantage. But, if the jury could reasonably believe defendant was the actual killer it could not have reasonably doubted defendant intended the killing of Adolph Clarke. (Cf. *People v. Darwiche\** (Cal.App.).)

DISPOSITION

The judgment is affirmed.

Thompson, Acting P. J., and Beverly, J.,† concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1984. Bird, C. J., was of the opinion that the petition should be granted.

---

*Reporter's Note: Hearing granted May 24, 1984 (Crim. 23737).
†Assigned by the Chairperson of the Judicial Council.